Argued 14 April ; decided 28 April, 1902.

## HESSE *v*. BARRETT.

[68 Pac. 751.]

PREFERENCE BY INSOLVENT DEBTOR.

1. In Oregon the law is now settled that an insolvent debtor may prefer one creditor over another, if the transfer is to pay or secure an honest debt, and no secret benefit is reserved to the debtor. Transfers to relatives will be closely examined, but are not necessarily void : *Mendenhall* v. *Elvert,* 36 Or. 375, cited.

FRAUDULENT CONVEYANCES—GENERAL PRINCIPLES.

2. In determining the legality of an alleged fraudulent conveyance the courts inquire whether there was an adequate genuine consideration, and whether a secret benefit was reserved to the grantor—and unless at least one of these points is decided in the negative the conveyance must be sustained,

FRAUDULENT CONVEYANCE—BONA FIDE DEBT.

3. Where a son who was indebted to his mother and others transferred a large amount of property to his brother-in-law on condition that he would assume and pay the son's debts, and the brother-in-law thereupon executed his note to the mother for the amount of the son's debt to her, such note represented a *bona fide* debt.

SUFFICIENCY OF EVIDENCE.

4. The evidence in this case is quite satisfactory that full value was given for the property transferred.

FRAUDULENT CONVEYANCE—EXPECTATION OF BENEFIT.

5. Where an insolvent conveyed property to a *bona fide* creditor, receiving credit for the full value thereof, the fact that such debtor expected that such

property would be reconveyed to his children—there being no agreement for such reconveyance—did not render the conveyance fraudulent as to the other creditors of such debtor.

From Washington:    THOMAS A. MCBRIDE, Judge.

Suit by H. W. Hesse against N. A. Barrett and others. From a judgment for plaintiff, defendant Lucinda C. Jackson appeals.                        REVERSED.

For appellant there was a brief over the name of *Thos. H. & E. B. Tongue,* with an oral argument by *Mr. E. B. Tongue.*

For respondent there was a brief and an oral argument by *Mr. Geo. R. Bagley.*

MR. CHIEF JUSTICE BEAN delivered the opinion.

This is a suit to set aside a deed from defendants Barrett and wife to their codefendant Jackson, and a general assignment made by them for the benefit of creditors, on the ground that both instruments were made for the purpose of hindering, delaying, and defrauding creditors. The court below held the assignment valid, but the deed from Barrett and wife to Mrs. Jackson fraudulent and void, and from this decree Mrs. Jackson appeals.

The facts are that in July, 1894, the defendants Barrett and wife were largely indebted and practically insolvent. The defendant Mrs. Jackson, who is Mrs. Barrett's mother, held their note for $11,400. Barrett and wife conveyed her the property in controversy, consisting of a house and two lots in Hillsboro, and 120 acres of farm land a few miles from the town, for an expressed consideration of $6,000, which amount was credited on the note abbve mentioned. About a month later, they made a general assignment of the remainder of their property for the benefit of creditors. At the time of the conveyance to Mrs. Jackson, the Barretts were residing in the dwelling house and cultivating the farm. They harvested the crop in the ensuing fall, paying Mrs. Jackson one third thereof as rent, and have

ever since occupied the dwelling house as her tenants, paying rent therefor. The plaintiff and his assignors were creditors of the Barretts at the time of the conveyance to Mrs. Jackson, and the contention is that such conveyance was made for the purpose of hindering, delaying, and defrauding creditors.

1. The fact that Barrett was insolvent at the time is no ground for impeaching the transaction. Under our statute an embarrassed or insolvent debtor may prefer one creditor to another, and if the transaction be an honest one, and made in good faith, it is valid, even though the preferred creditor may be a relative: *Sabin* v. *Columbia Fuel Co.* 25 Or. 15 (34 Pac. 692, 42 Am. St. Rep. 756) ; *Currie* v. *Bowman,* 25 Or. 364 (35 Pac. 848, 44 Am. & Eng. Corp. Cas. 662) ; *Jolly* v. *Kyle,* 27 Or. 95 (39 Pac. 999) ; *Inman* v. *Sprague,* 30 Or. 321 (47 Pac. 826) ; *Sabin* v. *Wilkins,* 31 Or. 450 (48 Pac. 425, 37 L. R. A. 465) ; *Mendenhall* v. *Elwert,* 36 Or. 375 (52 Pac. 22, 59 Pac. 805).

2. In the second edition of the American and English Encyclopædia of Law, the editors of that publication give this admirable and clear statement of the rule applicable to cases of this kind, and of the tests by which the good faith of the transaction is to be determined: "A failing or insolvent debtor, unrestrained by statute, may prefer and pay one or more of his creditors; and such conveyance will be upheld if the debt thus satisfied is *bona fide,* its amount not materially less than the fair and reasonable value of the property conveyed, and the payment of the debt is the sole consideration, and no use or benefit is secured or reserved to the debtor. In such case the inquiry should be directed to the *bona fides* of the debt, the sufficiency of the consideration, and the reservation of a benefit to the debtor. If the transaction is not assailable on some one of these grounds, fraud has no room for operation; and this though the effect of the preference is the hindrance and delay of all the other creditors of the debtor, or the deprivation of all possibility of their payment from his present assets": 14 Am. & Eng. Ency. Law (2 ed.), 226. The inquiry in this case should therefore be directed (1) to the question whether

the debt from the Barretts to Mrs. Jackson was *bona fide*; (2) whether the value of the property conveyed substantially corresponded to the credit allowed therefor; and (3) whether there was any benefit secured or reserved to the grantors.

3. Upon the first question there is no conflict in the testimony. Some time prior to 1888, Ulysses Jackson, a son of the defendant Mrs. Jackson, was indebted to her about $10,000 for money borrowed. He was also indebted to other parties, and, in consideration of an agreement by the defendant Barrett to pay and discharge his debts, he transferred and conveyed to him a large amount of real estate. Barrett thereupon gave Mrs. Jackson his individual promissory note for the amount due her from Ulysses, and on June 3, 1890, he and his wife, in renewal thereof, executed and delivered to her their joint and several promissory note for $11,400, due ten years after date, which note was outstanding and unpaid at the time of the conveyance in question.

4. Upon the second point, all the witnesses agree that the credit allowed by Mrs. Jackson on the note was the full value of the property. It is clear, therefore, that the debt in consideration of which the conveyance was made was *bona fide*, and the amount allowed for the property was its fair and reasonable value.

5. It remains to be seen whether there was any reservation of benefit to the grantors, and this constitutes the principal ground upon which the plaintiff asks to have the conveyance declared void. His contention is that it was understood and agreed between the Barretts and Mrs. Jackson at the time of the conveyance that she should take the property for the benefit of the children of the Barretts, and transfer it to them. The testimony upon which the plaintiff largely relies to sustain this position is Mrs. Barrett's, who seems to have been the principal actor in the matter, so far as she and her husband are concerned. She testified that, about a month before the deed was made, she suggested to her mother the advisibility of taking the conveyance, whereupon, being asked if she had any agreement with her mother concerning the same, she replied:

"Well, the agreement was— I went to her and asked her— I talked to her about taking this land. Nate wanted to put another mortgage on the Dobbins place, and I asked her if she did not think it would be right for me to have something for my children, and she said she thought it would be right. That was before the deed was made, but the day the deed was made I didn't have any conversation with her,—only just told her what we came for. * * She said she thought it was well enough for me to have something left for my children. I told mother that was the reason that we came with the deed." She further testified that she expected her children to get the land, that it was deeded to her mother so she could hold it for them, and that she supposed, if anything happened, her mother would deed it back to the children; but she did not state that Mrs. Jackson ever agreed to, or acquiesced in, such arrangement. When Mrs. Barrett spoke to her husband about conveying the property to her mother, he agreed to do so, and thereafter had prepared a deed from himself and wife to Mrs. Jackson, and another from her to the children. The one from him and his wife was properly executed, taken by them to Mrs. Jackson's house, and delivered to her, and she then and there caused a credit to be made upon the note of $6,000,—the value of the premises; but she did not execute the deed reconveying the property to the children. Mrs. Barrett testified that this matter was broached when the deed from herself and husband was delivered, but Mrs. Jackson did not execute it, but said "she would do what was right." Mrs. Jackson said she did not know of such a deed, and never agreed to execute it; that the land in controversy was deeded to her as a *bona fide* payment on the note she held against the Barretts; and that she did not agree to deed the property to their children; and never intended to do so. Mr. Barrett testified that he did not expect Mrs. Jackson to give the land to him or to his wife, but hoped she might deed it to his children, in view of the fact that she had previously given all her other property to his wife's brothers.

It is evident from the testimony that the Barretts expected

or hoped that their children would ultimately receive the property, and they were no doubt prompted thereby to make the conveyance in question. But that of itself is not sufficient to justify the court in declaring the deed fraudulent and void, unless it appears that Mrs. Jackson, the grantee of the premises, was a party to the scheme. When a conveyance is assailed as fraudulent as against the creditors of the grantor, and the grantee is not a volunteer, both the fraudulent intent of the grantor, and notice thereof to the grantee, must be shown; and, in our opinion, there is no such showing in this case. The deed from Barrett and wife to Mrs. Jackson was an absolute conveyance, without reservation, and Mrs. Jackson never did convey or transfer the property to the Barrett children. There is no evidence that she did not receive the conveyance in the utmost good faith, so far as she was concerned, and as a payment on the *bona fide* indebtedness due her from the grantors. She positively denied that she ever agreed or promised to transfer the property to the Barrett children, and it is undisputed from the testimony that she had no knowledge at the time that Barrett was insolvent and unable to pay his debts. It is immaterial what motives may have prompted the Barretts in making the deed, nor is it of importance that they hoped and expected that their children might ultimately receive a benefit therefrom. To avoid the deed on the ground of fraud, there must have been not only an expectation on the part of the Barretts that Mrs. Jackson would convey the property to their children, but a promise on her part to do so. Even if she had thereafter deeded the property to the children, it would not have rendered the deed from the Barretts to her void, unless it was made in pursuance of a prior agreement, and in furtherance of a design to hinder, delay, or defraud creditors.

In *Young* v. *Dumas,* 39 Ala. 60, the supreme court of that state, speaking of a gift by a father to his daughter of property received from his son-in-law in payment of a debt, say: "Mr. Horn had the clear right to collect his demand, which we have seen was just, from his son-in-law, Mr. Dumas; and

after he thus became the owner of the property, his right to give that property to the sole and exclusive use of his daughter Mrs. Dumas, cannot be successfully controverted by the creditors of Mr. Dumas. As to them the gift was harmless. That the effect may have been to delay, and possibly defeat, all other creditors in the collection of their demands, cannot, of itself, avoid the sale." Again, in *First Nat. Bank* v. *Carter,* 89 Ind. 317, where one insolvent and largely indebted, in order to defraud his creditors, procured an uncle of his wife to buy his lands worth $12,000 at sheriff's sale for that sum, upon an agreement that the uncle should, as he did, actually pay off the judgment for $1,559.92, and convey the land to the debtor's wife, it was held that, because it did not appear that the uncle or wife had notice of the intended fraud, the creditors could not subject the land to the payment of their demands. So, also, in *McPherson* v. *McPherson,* 21 S. C. 261, where an insolvent conveyed his home place to his sister in payment of an antecedent debt, and she to another, in trust for the wife and children of such brother, who continued to occupy the place, it was held that if the deed to the sister was made without an agreement for the reconveyance, and was not induced by her promise to reconvey, but was really in satisfaction of the debt, the deed could not be avoided, even though the brother expected that his wife and children would receive some donation from his sister. We are of the opinion, therefore, that although the Barretts may have expected at the time of the conveyance by them to Mrs. Jackson that their children would receive some donation from her, or that she would subsequently convey the property to them, the deed cannot be avoided, because there is no evidence that Mrs. Jackson, prior to the receipt of the deed, or at any other time, agreed or contracted to make such a transfer, and it was really received by her as in part satisfaction of a *bona fide* debt due her from the Barretts: *Van Riswick* v. *Spalding,* 117 U. S. 370 (6 Sup. Ct. 788; *Bamberger* v. *Schoolfield,* 160 U. S. 149 (16 Sup. Ct. 225): The decree of the court below will therefore be reversed.                                          REVERSED.