Argued October 13, reversed and decree entered November 16, 1920, former opinion modified on petition for rehearing February 23, 1921.

## CLARKE v. PHILOMATH COLLEGE.

(193 Pac. 470; 195 Pac. 822.)

**Fraudulent Conveyances—Nature of Conveyance Stated.**

1. A conveyance is fraudulent when its object or effect is to defraud another, or to avoid some duty or debt due, and a conveyance must not only be founded on a good consideration, but it must be *bona fide.*

---

1. On validity of voluntary conveyance as against subsequent creditors, see note in Ann Cas. 1914A, 601.

**Fraudulent Conveyances—Law Furnishes No Test Beyond Stating What are Badges of Fraud.**

2. The law furnishes no test by which it may be determined whether a conveyance is fraudulent, further than it adjudges what acts are badges of fraud.

**Fraudulent Conveyances—Courts Inquire into Consideration.**

3. In determining the question of legality of alleged fraudulent conveyances, the courts inquire whether there was an adequate and genuine consideration.

**Fraudulent Conveyances—Conveyance Without Valuable Consideration Prima Facie Fraudulent.**

4. A conveyance without a valuable consideration is *prima facie* fraudulent as to existing creditors.

**Fraudulent Conveyances—Inadequacy of Consideration Evidence of Lack of Bona Fides.**

5. Inadequacy of consideration is evidence of a fraudulent intent on the part of the grantor, of the grantee's knowledge thereof, and lack of *bona fides*.

**Fraudulent Conveyances — Close Relations Between Grantor and Grantee and Grantor's Stripping Himself of Property may be Considered.**

6. Where the alleged fraudulent conveyances were to a college, the close relations between the grantor and the manager of the grantee, as well as the fact that the grantor stripped himself of all his property should be considered on the question of fraud and lack of good faith.

**Fraudulent Conveyances—Grantee, Failing to Record Conveyance, is Estopped from Asserting Same Against Creditors.**

7. Where a college to which the grantor conveyed practically all his property failed to record the conveyances, and in the meantime the grantor became surety on a note, the college is, as against the holder of the note, estopped to assert the voluntary conveyance; credit having been extended by virtue of the grantor's ostensible ownership.

**Fraudulent Conveyances—Where Conveyance is Voluntary, Intent to Defraud Unnecessary.**

8. Where a conveyance is voluntary, an actual intent to defraud is not necessary to render it fraudulent as to existing creditors.

**Fraudulent Conveyances—Conveyance to Hinder and Delay will be Deemed Fraudulent.**

9. Where the effect of a particular transaction is to hinder and delay creditors, the effect will be deemed fraudulent.

---

7. Delay in recording deed as constituting fraud on creditors of grantor, see note in **Ann. Cas.** 1918A, 1054.

Fraudulent Conveyances—Conveyance Held Fraudulent as to Subsequent Creditors.

10. Where an aged man conveyed practically all his property to a college, reserving himself a life estate, and the college failed to record the deeds for some time, during which period the grantor became surety on notes, and the maker defaulted, the conveyances will, under Section 7397, L. O. L., be declared void, as fraudulent to the subsequent creditor.

Fraudulent Conveyances—Badges of Fraud may be Repelled by Showing Full Consideration.

11. Badges of fraud may be repelled by showing payment of full consideration; but, where numerous signs of fraud exist, it is incumbent on the party seeking to uphold the transfer, to meet and overcome them.

Fraudulent Conveyances — Voluntary Conveyance, Operating to Hinder and Delay Creditors, Fraudulent.

12. A voluntary conveyance, which operates to hinder and delay creditors, in view of the grantor's circumstances and age, will be deemed fraudulent, notwithstanding no fraudulent intent was shown.

Fraudulent Conveyances—Where Only Partial Consideration Paid, Property is Pro Tanto Subject to Claims.

13. Where a grantee paid only a partial consideration for property, the conveyance being in the main voluntary, such property is subject to the claims of the grantor's creditors, even though credit was extended after conveyance in reliance on the grantor's presumptive ownership; the conveyance not having been recorded.

Fraudulent Conveyances—Creditor, Who Persistently Sought to Enforce His Claim, not Guilty of Laches.

14. A creditor, who persistently sought to enforce his claim against the estate of his debtor, and against the debtor's voluntary grantee, held not guilty of laches, and none could be imputed to the administrator *cum testamento annexo*, who sued the voluntary grantee for benefit of the creditor.

ON PETITION FOR REHEARING.

Frauds, Statute of—Defense of Statute cannot be Asserted by a Stranger to Contract.

15. The defense that the statute requires a contract to be in writing can only be raised by one of the parties, and not by a stranger thereto.

Frauds, Statute of—Administrator Cum Testamento Annexo of Party can Raise Defense of Statute.

16. In a suit by the administrator *cum testamento annexo* of a grantor to cancel deeds claimed to be voluntary, the administrator represents, not only the creditors, but grantor, and can raise the defense that under the statute grantor was not legally bound to pay a debt, the payment of which by grantee was claimed to be a consideration for the conveyance.

Fraudulent Conveyances—Defendants must Prove Allegation That Judgment was not Binding on Them.

17. In a suit by an administrator to cancel deeds, the defendants have the burden of proving the allegation in their answer that the judgment in favor of a creditor of deceased, for the payment of which a cancellation was sought, was not binding on the grantees.

From Benton: GEORGE F. SKIPWORTH, Judge.

Department 2.

This is a suit commenced by the plaintiff against the defendants to set aside three deeds and a transfer of personal property made by Samuel McLain to the defendant Philomath College, a United Brethren institution, whereby the entire estate of plaintiff's intestate, Samuel McLain, was transferred during the latter years of his life to the defendant Philomath College, leaving nothing for the payment of his creditors. The Circuit Court found in favor of the defendants and dismissed plaintiff's complaint, from which decree plaintiff appeals.

Samuel McLain, for more than forty years prior to his death, resided near the town of Philomath, in Benton County, Oregon, and during all of that time was an officer of the defendant Philomath College, being one of the board of directors, and had an interest in the success and welfare of the college. He was a single man, having no near relatives living at the time of his death. He lived alone on a portion of the land in controversy. He died in Benton County, Oregon, in April, 1910, leaving a last will and testament, dated June 21, 1907, devising and bequeathing all of his property to the defendant Philomath College. The will was probated in that county, and James R. Parker was appointed executor thereof according to the provisions of the will, and thereafter duly qualified as such executor. After-

99 Or.—24

wards Mr. Parker resigned as executor, and on
November 8, 1913, plaintiff, Arthur Clarke, was duly
appointed as administrator with the will annexed of
the estate of Samuel McLain, deceased, and duly
qualified.

The defendants, J. T. Warman, B. E. Emmerick,
J. E. Henkle, G. A. Bennett, W. W. Rosbraugh, R. C.
von Lehe, W. M. Bell, R. W. Jones, Jackson White,
G. E. McDonald, C. C. Bell, Joseph Means, H. B.
Borks, and E. H. Castle constitute the board of
trustees of the defendant college, a corporation under
the title of Board of Trustees of Philomath College,
with perpetual succession and full power to manage
the affairs of, and receive gifts of money and prop-
erty for the use of, defendant Philomath College.
The other defendants are purchasers of tracts of the
land involved. The defendant the Home Missionary
Society of United Brethren in Christ is a corporation
organized under the laws of the State of Ohio. The
assets of the estate of Samuel McLain consist of
$45.45 cash, there being no other assets.

On February 28, 1904, J. W. McLain, with Samuel
McLain as surety, executed and delivered to J. W.
Ingle a promissory note for $2,500, due on or before
one year after date with interest at 8 per cent per
annum. Ingle had no notice or knowledge of the
execution of the deed to parcels A and B until long
after the execution of the note. On February 6,
1911, J. W. Ingle instituted an action on the note, in
the Circuit Court for Benton County, against James
R. Parker, as the executor of the estate of Samuel
McLain, deceased. On November 29, 1912, J. W.
Ingle recovered judgment against James R. Parker,
as the executor of the estate, in the sum of $4,110,
with interest thereon at the rate of 8 per cent per

annum from that date, and for $150 attorneys' fees and costs taxed at $151.30, with interest upon each of the two last-named sums at the rate of 6 per cent per annum from the date of judgment. This judgment remains unsatisfied.

On August 3, 1899, Samuel McLain was, and had been for a long time prior thereto, the owner in fee simple of certain real estate situated in Benton County, Oregon, designated in the complaint as "parcel A," described as follows, to wit:

Farm lot number seven (7), containing eleven (11) acres, and farm lot number eight (8), containing sixteen and one-quarter (16¼) acres more or less, all situated in the addition to the city of Philomath.

On that date McLain executed to the trustees of Philomath College a deed conveying the land described as parcel A, reserving unto himself the entire possession, use, and profits of the land during his natural life. That deed was not recorded until January 26, 1906. The conveyance of parcel A was a voluntary conveyance.

On November 6, 1900, Samuel McLain was, and had been for a long time before then, the owner in fee simple of certain real estate in Benton County, Oregon, referred to in the record as "parcel B," described as follows, to wit:

Beginning at a point in the center of the Alsea road southwest of the Philomath College Camp Ground and eighty rods (80) along the line of the center of said road from the center of Marys River, where county bridge crosses said river; thence in a Westerly direction sixty-two (62) rods to a point sixty-five (65) rods South of Marys River; thence Northerly to a point in the center of Marys River one hundred and four (104) rods Westerly from point of beginning; thence following the meanderings

of said river in a Westerly direction to the Northeast corner of the Van Cleave place; thence Southerly along the east line of the Van Cleave and Van Blaricom places to the center of the Big Elk wagon road; thence Easterly along the center of said road to the center of the Alsea wagon road; thence Northerly forty (40) rods to point of beginning. Also all that parcel of real estate lying North of Marys River and West of Philomath College Camp Ground, bounded as follows: Beginning at center of Marys River at Southwest corner of Philomath College Camp Ground; thence Northwest twenty-four (24) rods; thence West thirty-six (36) rods; thence South to center of Marys River; thence along said River to point of beginning—all the above-described property being situated in the County of Benton and State of Oregon, and containing sixty (60) acres, more or less.

On that date McLain executed to the trustees of Philomath College a conveyance of the land described as parcel B, reserving unto himself the entire possession, use, control, rents, and profits of the land during his natural life. This deed was not recorded until January 26, 1906. The conveyance of parcel B was also a voluntary conveyance.

On June 20, 1907, McLain was, and had been for a long time prior thereto, the owner in fee simple of certain real estate referred to in the record as "parcel C," described as follows, to wit:

Beginning at a point in the center of the Alsea Road and in the center of Marys River, where the Alsea Road crosses Marys River at the Southeast corner of Philomath College Camp Ground; thence along center of the Alsea Road South Westerly to a point eighty (80) rods from point of beginning; thence in a Westerly direction sixty-two (62) rods to a point sixty-five (65) rods in a Southerly direction from Marys River; thence Northerly to a point in the center of Marys River 104 rods Westerly from

point of beginning; thence following the meanderings of Marys River in an Easterly direction to point of beginning, containing 40 acres, more or less.

On that date he executed and. delivered to the trustees of Philomath College the land described as parcel C, reserving to himself the entire ·possession, control, rents, and profits of the land. This deed was duly recorded on June 21, 1907. The consideration expressed in the third deed was $1,000.

In its amended answer the defendant, Philomath College, claims the consideration for tract C was as follows:

Indebtedness ..............................$ 59.05
Subscription to building fund.............. 100.00
Cash ...................................... 401.17
Note of Samuel McLain and L. C. Crow..... 609.40
Indebtedness of J. M. and R. A. Kitson and
   McLain ................................. 400.00

                        Total........$2,014.93

It developed upon the hearing that at the time of the execution of the deed for tract C another deed was executed, conveying to the college 160 acres in Lincoln County. There is nothing in the record as ·to the value of this land. Shortly after the execution of the conveyance for tract C and the Lincoln County land, the college paid an indebtedness of . $401.17 from McLain to J. W. Ingle, based upon a promissory note for $300, dated July, 1903.

Soon after McLain's death, in 1910, the college platted the tracts B and C into acreage tracts, at an expense of about $100. Tract C comprises lots 1, 2, 6, 7, 8, and 9, the major part of 14 and parts of 3, 5, and 13. This was largely bottom land, and was the most valuable, comprising the improvements. On November 17, 1910, the college executed an option

agreement in favor of Henry Ambler, authorizing him to sell 141 acres for the consideration of an average of $100 per acre, including the Samuel McLain home place, consisting of 111 acres, the McLain town lots 7 and 8, consisting of 24½ acres, and other land not involved herein. Under the terms of the agreement Ambler had the privilege to sell any surveyed division of the lands on the net terms to the college, as per the following graded prices: McLain home place, lots 1, 7, 8, 14, $125 per acre; lots 2, 6, 9, 13, 4, 11, $100 per acre; lots 15, 16, 17, and 18, $65 per acre; subdivisions of Philomath town lots 7 and 8, $120 per acre. It was agreed that, upon sales being made according to the conditions mentioned, the college would give to each purchaser a sufficient title to the lots purchased and furnish an abstract of such title. The lots were all sold pursuant to the agreement. Mr. Ambler testified that he informed every purchaser that the college was back of the whole thing and guaranteed the title. It appears that each purchaser had knowledge of the claim of Ingle, and that after McLain's property was transferred to the college there was nothing left to pay Ingle's claim, or any claim against the estate. Mr. Jermiah E. Henkle, one of the officers of the college for over twenty years, testified in regard thereto: "I suppose, if it was paid, the college would have to pay it." Mr. Henkle further testified that a few months before McLain died he went to see him, and McLain was worrying over having to pay a surety note to Ingle. This witness thought it was a $300 note, which was paid by the college, amounting, with interest, to $401.17. Mr. J. R. Parker, a shrewd business man, was the agent of the college in obtaining donations, and obtained the conveyances from Mc-

Lain in favor of the college. He was allowed a commission of twenty per cent, or $1,500, for conveyance of tracts A and B in a settlement with the college, evidently based upon the value of $7,500 for those two tracts.

The Circuit Court found the facts substantially as above stated; that there was no fraud in the matter of the conveyance from McLain to the college, or intent to hinder, delay, or defraud any of McLain's creditors; that the conveyances of tracts A and B were voluntary; and that the conveyance of parcel C was for a valuable consideration. The court also found that the purchasers "did have knowledge that Ingle held a note against the estate of Samuel McLain, and that said purchasers purchased with the understanding that Philomath College was back of their title."    REVERSED. DECREE ENTERED.

For appellant there was a brief over the name of *Messrs. Smith & Bryson,* with an oral argument by *Mr. E. R. Bryson.*

For respondents there was a brief over the names of *Messrs. Weatherford & Weatherford* and *Messrs. Yates & Lewis,* with oral arguments by *Mr. James K. Weatherford* and *Mr. Jay L. Lewis.*

BEAN, J.—Plaintiff contends that the three conveyances from Samuel McLain to the defendant Philomath College were voluntary gifts, and that they hindered, delayed, and defrauded McLain's creditors; that the plaintiff loaned the sum of $2,500 on the credit of McLain, who was surety on the note for his nephew at a time when McLain was the record owner of the three tracts; that the transfer of all of the property of McLain to the college, al-

though intended as a meritorious benefaction, worked a constructive fraud upon plaintiff as a creditor; and that the failure of the trustees to record the deeds to parcels A and B until long after the execution of plaintiff's note by McLain, and permitting him to remain in possession and exercise acts of ownership over the real estate, was a species of fraud, and should estop the defendant, Philomath College, from asserting ownership of the land as against plaintiff, who loaned his money on the faith of the apparent title to the land.

It is the position of defendant Philomath College that at the dates of the conveyances of tracts A and B the indebtedness of plaintiff did not exist, and the deeds, although voluntary, are valid as to subsequent creditors, and that the deed to tract C was executed for a valuable consideration, about one third of the value of the land. This defendant also contends that plaintiff is guilty of laches in asserting his claim.

It appears from the record that for a number of years before his death Samuel McLain was not in very good health, unable to do any work, except the lightest, around his farm. He intrusted his business affairs largely to J. R. Parker, the business manager of the defendant Philomath College, who procured the conveyances sought to be set aside. For a number of years preceding his death McLain was continually making donations of money and property and notes to the college, and during the last ten years of his life the college acquired practically all of his estate. It appears to have been McLain's desire and the expectation of the officers of the college that that institution should be the beneficiary

of all. of McLain's property, after paying his necessary expenses and satisfying his just debts.

1–6. The following general rules serve as a guide. In 20 Cyc. 345, we find the following definition and rule regarding tests as to fraudulent conveyances:

"A conveyance is declared to be fraudulent when its object or effect is to defraud another, or the intent with which it is made is to avoid some duty or debt due by or incumbent upon the party making the transfer.

"The question in every case, except in most jurisdictions in the case of voluntary conveyances, is whether the conveyance was a *bona fide* transaction, or a trick and contrivance to defraud creditors, or whether it reserves to the debtor an advantage inconsistent with its avowed purpose. It is not sufficient that it was founded on good consideration, or was made with a *bona fide* intent; it must be both. If defective in either of these particulars, although good between the parties, it is voidable as to creditors. The rule is universal, both at law and in equity, that whatever fraud creates, justice will destroy. The test as to whether or not a conveyance is fraudulent is: Does it prejudice the rights of creditors?"

In the determination of the question of fraudulent intent in the conveyance of real property in fraud of the rights of creditors, a conclusion must be reached from the facts and circumstances of the particular case. The law furnishes no test by which it may be determined, further than it adjudges what acts are *indicia* of fraud, and which constitute badges of,fraud: *Weaver* v. *Owens,* 16 Or. 301 (18 Pac. 579); 12 R. C. L., p. 477, § 10. In determining the legality or illegality of an alleged fraudulent conveyance, the courts inquire whether there was an adequate genuine consideration: *Hesse* v. *Barret,* 41 Or. 202 (68 Pac.

751).   A conveyance of land, made by a debtor without valuable consideration, is *prima facie* fraudulent as to existing creditors: *Flynn* v. *Baisley,* 35 Or. 268, 271 (57 Pac. 908, 76 Am. St. Rep. 495, 45 L. R. A. 645); *Elfelt* v. *Hinch,* 5 Or. 255; *Davis* v. *Davis,* 20 Or. 78 (25 Pac. 140); *Taylor* v. *Miles,* 19 Or. 550 (25 Pac. 143).   Inadequacy of consideration is evidence of a fraudulent intent on the part of the grantor and of the grantee's knowledge thereof, and lack of *bona fides.*   Gross inadequacy, such as shocks the moral sense, establishes fraudulent intent and lack of good faith: *Philbrick* v. *O'Connor,* 15 Or. 15 (13 Pac. 612, 3 Am. St. Rep. 139); *Scoggin* v. *Schloath,* 15 Or. 382 (15 Pac. 635); *Wright* v. *Craig,* 40 Or. 191 (66 Pac. 807); 20 Cyc. 441; 12 R. C. L., p. 478, § 11; Id., p. 542, § 67; Bigelow on Fraudulent Conveyances (Rev. ed.), 519, 603.   A distinction is made between the effect of inadequacy of consideration in a suit by the grantor and its effect where creditors attack the conveyance by means of which a debtor's property has been put beyond their reach.   The close business or social relationship between Samuel McLain, the grantor, and J. R. Parker, the manager of the grantee, in the deeds in question, has about the same force as evidence of fraud and notice to the grantee as does blood relationship: 12 R. C. L., p. 490, § 22.   The fact that the conveyances complained of in this suit transferred substantially all of the property of the debtor, Samuel McLain, is entitled to consideration as evidence of fraud and lack of good faith: *Mendenhall* v. *Elwert,* 36 Or. 375, 384 (52 Pac. 22, 59 Pac. 805); 20 Cyc. 449.

7–10. The withholding of the two deeds of tracts A and B from the public records for about six years, and permitting Samuel McLain to remain in pos-

session of the property and exercise such acts of ownership as conveying a right of way over the land, are badges of fraud. Such action on the part of the agent and officers of the defendant Philomath College should estop it from asserting ownership of the land as against the claim of Ingle, who during that period extended credit in reliance upon such apparent ownership in McLain: *Sears* v. *Davis,* 40 Or. 236 (66 Pac. 913); Bigelow on Fraudulent Conveyances, p. 521.

Where a conveyance is voluntary an actual intent to defraud is not necessary to render it fraudulent as to existing creditors: *Wooten* v. *Steele,* 109 Ala. 563 (19 South. 972, 55 Am. St. Rep. 947); *Farmers' etc. Bank* v. *Price,* 41 Mo. App. 291; *Bouquet* v. *Heyman,* 50 N. J. Eq. 114 (24 Atl. 266). Where the effect of a particular transaction with a debtor is to hinder, delay, or defraud creditors, the law infers or supplies the intent, although there may be no direct evidence of a corrupt or dishonorable motive, but, on the contrary, an actual, honest, but mistaken, motive existed. The law interposes, and declares that every man is presumed to intend the natural and necessary consequences of his acts; and the courts must presume the intention to exist, when the prohibited consequences must necessarily follow from the act. Hence it has been said that where a conveyance, by its terms, operates to hinder, delay, or defraud creditors, the intent to do so is imputed to the parties, and no evidence of intention can change that presumption. A conveyance will be set aside, where it is made with an intent either to hinder, delay, or defraud. An intent to defraud absolutely is unnecessary, for the statute is in the disjunctive, and either intent is sufficient: 20 Cyc. 461–463A.

Section 7397, L. O. L., declares:

"Every conveyance or assignment in writing or otherwise of any estate or interest in lands or in goods or things in action, * * made with the intent to hinder, delay, or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts, or demands, * * as against the persons so hindered, delayed, or defrauded, shall be void."

The fact that J. R. Parker, agent of the college, went to J. W. Ingle and inquired if there were any other obligations of Samuel McLain, and that Ingle, for the reason that he had severed diplomatic relations with Parker, refused to talk with him and told him to "go to thunder," does not change the legal status of the matter.

There is some contention made by the defendant Philomath College that it is not bound by the judgment on the note in the action of Ingle against Parker, as executor of the last will and testament of Samuel McLain, deceased. The action on the note was contested by Parker in the interest of Philomath College, and the facts and circumstances of the present case clearly indicate that Samuel McLain executed the note as surety for his nephew, James McLain, and was primarily liable on the note. The money was loaned by Ingle on the strength of Samuel McLain's signature. At the time Samuel McLain was the apparent owner of record of the title to the land, and credit was given to him in reliance on such ownership. The negligence of the trustees in failing to record the deeds to parcels A and B led Ingle into extending such credit. Where such a voluntary conveyance has not been recorded, such a creditor is in the same position as an existing creditor would be to set aside the conveyance: *Steele* v. *Coon,* 27 Neb.

586 (43 N. W. 411, 20 Am. St. Rep. 705); Bigelow on Fraudulent Conveyances, p. 105, and note. *Steele* v. *Coon,* 27 Neb. 586 (43 N. W. 411, 20 Am. St. Rep. 705), was a case practically identical with the case at bar upon the question of recordation. We quote from the opinion in that case, 27 Neb., at page 597, 43 N. W. at page 414, 20 Am. St. Rep. 705, as follows:

" 'A deed, not fraudulent at first, may become so afterwards by being concealed, or not pursued, by which means creditors have been drawn in to lend their money': *Hildreth* v. *Sands,* 2 Johns. Ch. (N. Y.) 35. 'A deed concealed from the public, the grantor remaining in possession and acquiring credit on the strength of his supposed ownership of the property, is fraudulent': *Barker* v. *Barker's Assignee,* 2 Woods (U. S. C. C.), 87 [Fed. Cas. No. 986]. In addition to cases cited in the brief of counsel for appellants, see, also, *Sexton* v. *Wheaton,* 8 Wheat. (U. S.) 229, [5 L. Ed. 603]; *Worseley* v. *Demattos,* 1 Burrows (Eng. K. B.), 467; *Leukener* v. *Freeman,* Freem. (Eng. Ch.) 236. But the conveyance of the farm, made on the thirteenth day of October, 1884, will be upheld to the extent of the actual consideration which passed therefor between the Coons, husband and wife."

This case is also instructive as bearing upon the deed to parcel C.

11. Badges of fraud may be repelled by showing that a full consideration was paid for the property, but the proof of fairness would be more stringent than if such badges of fraud did not exist. Where numerous signs or badges of fraud exist, it is incumbent on the party seeking to uphold the transfer to meet and overcome them: 20 Cyc. 453. There are several badges of fraud in the transfer of the property in question. The grantee, Philomath College, has failed to fulfill such requirements. It has failed

to show any money consideration for the conveyances of tracts A and B or a full consideration for the deed to tract C.

12. The gift of McLain to the college was of such an amount, and made under such circumstances, taking into consideration his age and health, and his assets remaining, and all of the conditions obtaining, that it would necessarily hinder, delay, or defraud his creditors. In such a case a voluntary conveyance is deemed fraudulent, notwithstanding the fraudulent intent is not otherwise shown: 20 Cyc. 453, Â, 2. A man must be just before he is generous, and consequently McLain should not be permitted to prejudice his creditor by giving away practically all of his property for little or nothing. Tracts A and B should be subject to the payment of the judgment of J. W. Ingle.

13. As to the consideration paid for the conveyance of tract C, the item of indebtedness of J. M. and R. A. Kitson was not a legal claim against McLain. He was not bound to answer for the debt of others. This amount of $400 should be deducted from the consideration claimed by the defendant, leaving at the most $1,614.93 which may be considered as paid for tract C embracing 40 acres, much of which is rich bottom land and from the testimony is believed to have been worth $4,000 at the date of the deed. Therefore the conveyance of parcel C was partially voluntary. In equity it should be upheld to the extent of the consideration paid by Philomath College, namely, $1,614.93, and parcel C should, if necessary, be subjected to the judgment claim of Ingle to the extent of the value thereof, over and above the sum of $1,614.93: 12 R. C. L., p. 478, § 11; note, 5 L. R. A.

(N. S.) 395; *Steele* v. *Coon,* 27 Neb. 586 (43 N. W. 411, 20. Am. St. Rep. 705).

14. J. W. Ingle, the judgment creditor, has been persistently proceeding to enforce his claim ever since, and even before the will of Samuel McLain was probated, and we concur in the finding of the trial court that neither the plaintiff nor J. W. Ingle is guilty of laches.

The decree of the lower court will be reversed, and one entered declaring the judgment of J. W. Ingle a lien upon tracts A, B, and C, above described, subject to the prior and superior right of defendant, Philomath College, to tract C in the sum of $1,614.93; that upon the satisfaction in full of the judgment of J. W. Ingle against the estate of Samuel McLain, deceased, and the costs of this suit within six months from the entry of this decree on the mandate in the lower court, the lien of said judgment shall be canceled and the title to tracts A, B, and C shall be confirmed in defendant, Philomath College, and its grantees, successors, and assigns. In the event said judgment is not paid within said time, then the land described as tracts A, B, and C, or so much thereof as may be necessary, shall be sold as upon execution subject to the superior right of the defendant Philomath College to tract C to the amount of $1,614.93, and the proceeds of such sale applied to the satisfaction of said judgment, cost, and attorney's fees, and the costs of this suit.

REVERSED.   DECREE ENTERED.

McBRIDE, C. J., and JOHNS and BENSON, JJ., concur.

Former opinion modified and rehearing denied February 23, 1921.

ON PETITION FOR REHEARING.

(195 Pac. 822.)

On petition for rehearing.

FORMER OPINION MODIFIED. REHEARING DENIED.

*Messrs. Weatherford & Wyatt* and *Messrs. Yates & Lewis,* for the petition.

*Messrs. Smith & Bryson, contra.*

Department 2.

BEAN, J.—Defendants petition for a rehearing and urge further consideration of some of the questions involved in the case. Among other things it is urged that the court erred in rejecting, as a part of the consideration for tract C, the note of J. M. and R. A. Kitson, amounting to $400. It was held in our former opinion that Samuel McLain was not bound to pay this note for the reason that he did not sign it and that no agreement on his part to pay the same was evidenced in writing.

15. It is contended by the defendants that there is no authority for giving a third person the right to question the validity of that consideration; that the right to claim the benefit of the statute of frauds is personal to the debtor, and that a creditor cannot make such claim. We are referred to 20 Cyc. 306, 307.

The defense of the statute of frauds is personal, and cannot be interposed by strangers to the agreement. It can only be relied upon by the parties to the contract or their representatives or privies. Like

many other defenses, such as usuary and infancy, it
might be waived: 29 Am. & Eng. Ency. of Law, 807.

16. This suit is brought by plaintiff as adminis-
trator with the will annexed of the estate of Samuel
McLain. It is not maintained by a stranger to the
oral agreement alleged to have been made by Samuel
McLain to answer for the debt of the Kitsons. As
a general rule an executor or administrator has
practically the same remedies at his disposal, and
may make the same defenses, as those available to
the decedent in his lifetime: 11 R. C. L., p. 258, § 293.
The personal representative of a decedent may set
up the defense of the statute of frauds where it is
sought to charge the estate on a contract within the
statute: 25 R. C. L., p. 735, § 384. While the plain-
tiff represents the creditors of the decedent, he also
represents the estate of Samuel McLain, deceased,
and it was his duty and privilege to see that only
valid claims were allowed against such estate.

17. Complaint is made that defendants were not
bound by the former judgment on the note, in the
action of *Ingle* v. *Parker* as executor of the last will
and testament of Samuel McLain, deceased. There
were allegations on the part of defendants to the
effect that the note was not valid as against them,
but the allegations were not sustained by the testi-
mony in this case. We referred to the fact that the
note has been twice contested. The burden is un-
questionably upon the defendants to maintain the
allegations of their answer.

The plaintiff files a motion for the allowance of
expenses of administration of the estate of Samuel
McLain, deceased, in addition to the costs and dis-
bursements of this suit. This matter was overlooked.
The former opinion will be modified, so that, subject

to the prior and superior right and lien of the defendant, Philomath College, to tract C in the sum of $1,614.93, the conveyances to tracts A, B and C will be decreed to be void as against the plaintiff, as administrator *cum testamento annexo* of the estate of Samuel McLain, deceased, to the extent of the judgment against said administrator, in favor of J. W. Ingle, the costs of this suit and the expenses of administration of said estate, as determined by the County Court of Benton County, Oregon; that this cause be remanded to the Circuit Court of Benton County, Oregon, to decree the amount of such expenses of administration; that upon the satisfaction in full of said judgment, costs and expenses of administration within six months from the entry of decree on the mandate of the lower court the title to tracts A, B and C shall be confirmed in the defendant, Philomath College, and its grantees, successors and assigns; and that in the event such payments are not made within said time, then the lands described as tracts A, B and C or so much thereof as may be necessary shall be sold as upon execution, subject to the superior right and lien of the defendant, Philomath College, upon tract C in the sum of $1,614.93, and the proceeds of such sale applied in satisfaction of said judgment, costs of this suit, and the expenses of administration of said estate.

With this modification the former opinion is adhered to, and the petition for rehearing denied.

MODIFIED AND REHEARING DENIED.

JOHNS, MCBRIDE and BENSON, JJ., concur.