Argued April 5, reversed and remanded June 7, 1977

NELSON, *Respondent/Cross-Appellant,*
*v.*
HANSEN et al, *Appellants/Cross-Respondents.*
(TC 22281, SC 24665)
565 P2d 727

[ 572 ]

T. W. Churchill, Salem, argued the cause for appellants/cross-respondents. With him on the briefs was Norman K. Winslow, Salem.

Malcolm L. Brand, Salem, argued the cause for respondent/cross-appellant. With him on the brief was J. Ray Rhoten, of Rhoten, Rhoten & Speerstra, Salem.

TONGUE, J.

**TONGUE, J.**

This is a suit by a creditor to impose a lien upon a fund representing the proceeds of the sale of the home of defendants Hansen after it had been previously conveyed by them to their attorney, defendant Winslow, as trustee, to be held by him as security for payment of his attorney fees in two suits against them by plaintiff and also as security for payment of previous loans from their son Allan.

The trial court held that the trust deed was void upon the ground that it was made with the intent of both defendants Hansen, as grantors, and defendant Winslow, as grantee, to defraud creditors, including plaintiff, and that although their son Allan was not "a party to the fraudulent transaction," a court of equity "will not lend its aid to enforce a trust tainted with fraud" for the benefit of such a third party.

Defendants appeal, denying any fraud and contending, among other things, that there was a "valid and fair consideration" for the transfer in the form of legal services by defendant Winslow and previous loans by son Allan and that a debtor may make a valid preference between creditors (subject only to the limitations imposed by federal bankruptcy law) and that this includes a preference to an attorney to secure him for payment of his attorney fees.

Plaintiff contends, on the contrary, that under ORS 95.070 a conveyance "made with the intent to hinder, delay or defraud creditors" is void; that under ORS 95.090 fraudulent intent is a question of fact; that the burden is shifted to the transferee to disprove fraud when there are sufficient "badges of fraud," as in this case; and that an attorney employed to represent an insolvent debtor has no lien on a fund in court for his compensation. Plaintiff also contends that defendants failed to sustain their burden to prove that the transfer was not in fraud of plaintiff as a creditor.

Because we try this case de novo as an appeal in a

suit in equity it is necessary to review what we consider to be the more significant facts.

*The deed and letter dated May 31, 1972.*

In 1970 plaintiff sold to defendants Hansen by contract the Sunburst Motel for $178,000. Defendants' operation of the motel was not successful and they defaulted on the contract. On May 24, 1972, plaintiff filed a foreclosure suit against them. Meanwhile, plaintiff and defendants Hansen were also engaged as partners in operation of the Village Inn. Disagreements arose between the partners and dissolution proceedings also were filed by plaintiff against defendants Hansen on May 24, 1972.

On or about May 2, 1972, the Hansens engaged defendant Winslow, a Salem attorney, to represent them in connection with a proposed sale of the Village Inn. That representation soon extended to the defense of the two lawsuits.

On May 31, 1972, defendants Hansen executed a deed to their home to Winslow, "as trustee," accompanied by a letter by Winslow stating, among other things, that he was to hold title to secure payment of prior and future attorney fees in the pending litigation and also to secure an obligation of approximately $7,000 owed by Hansens to their son; that the deed was "purely by way of a security transaction and that I am not to have an ownership interest in the real property;" that the "obligations" were to mature within one year or "at any earlier time that there should be a suit to foreclose the first mortgage, or an effort by [plaintiff] to 'reach' your interest therein pursuant to any judgment or decree obtained by him," and that Winslow had not estimated the amount of his fees at that time, but that his "time" would be "a substantial factor in the determination of that ultimate fee."

At the time of that deed and letter Hansens revealed their financial problems to Winslow and he knew that they were "in trouble" and could not pay

[ 574 ]

their bills. He testified, however, that he did not know what the Hansens assets were, but only thought that their interest in the house would be adequate to secure himself and Allan.

When asked whether the purpose of the transaction was "to avoid Nelson entirely," Mr. Winslow testified:

"No, certainly not entirely. Primary purpose was to secure my fees and advances and also because I was asked to do so to protect the interest of Allan Hansen."

Mr. Hansen had no recollection of that discussion. Mrs. Hansen testified, however, that the purpose of the deed was to "make sure that Mr. Winslow was paid his fees" and to give their son Allan some security for his loans, rather than to make it hard for Nelson to get anything."

The deed was recorded on June 6, 1972. The existence of the deed and letter was not then revealed to plaintiff or his attorney until July 1975. Mr. Winslow testified that he did not consider that he had any obligation to do so. Meanwhile, the Hansens continued to live in the house.

*Subsequent events.*

On October 29, 1972, while the partnership dissolution proceeding involving the Village Inn property was pending, plaintiff and the Hansens contracted to sell that property, following negotiations by Winslow. Funds from that sale were paid to Winslow and were deposited by him in a trust account. When payments became delinquent on that contract Winslow filed a complaint on behalf of Hansens. That suit eventually proceeded to a decree of foreclosure in favor of Nelson and Hansens.

Meanwhile, on April 12, 1973, following an opinion dated February 26, 1973, a decree of foreclosure was entered against Hansens in the sum of $163,571.86 in the Sunburst Motel case. An unsuccessful appeal was then taken by Winslow to this court in that case. *See Nelson v. Hansen,* 269 Or 197, 523 P2d 1248, decided

[ 575 ]

July 5, 1974. Meanwhile (according to Winslow), because Hansens were unable to post a supersedeas bond and in an attempt to protect them from execution pending appeal, Hansens, on March 1, 1973, conveyed to Winslow, as trustee, their interest in the Village Inn property, and also assigned to him their interest in the contract for the sale of that property. That deed was recorded on March 5, 1973, but plaintiff and his attorney were not then notified of the deed or assignment.

On December 28, 1973, the Hansens contracted to sell their house, retaining the right to live in it for one year and under an arrangement by which the proceed of the sale, $21,259.58, were deposited in escrov subject to the claims of Winslow and Allan Hansen. Mr. Winslow also prepared and filed on January 30, 1974, a claim for homestead exemption on behalf of the Hansens in the sum of $7,500.

In October 1974 the Hansens conveyed their last asset to Winslow, consisting of real property in Nebraska.

Mr. Winslow offered time records in evidence to support the amount of his claims for legal services in the sum of $20,900. The trial court found that these fees were reasonable and there is no such issue on this appeal. Also, checks totalling $6,500 were offered in evidence to support the amount of the loans claimed by son Allan Hansen and the amount of such loans is not an issue on this appeal. These sums exceed the amount deposited in escrow as the proceeds of the sale of the house. Meanwhile, Hansens are in bankruptcy and it appears that there may be no other substantial assets available to plaintiff, as a creditor.

ORS 95.070 provides as follows:

"*Conveyance, transfer or device to defraud, hinder or delay creditors. Every conveyance* or assignment in writing or otherwise of any estate or interest in lands, goods

or things in action, or of any rents or profits issuing therefrom, and every charge upon lands, goods or things in action, or upon the rents or profits thereof, *made with the intent to hinder, delay or defraud creditors* or other persons of their lawful suits, damages, forfeitures, debts or demands, and every bond or other evidence of debt given, suit commenced, decree or judgment suffered with the like intent, as against the person so hindered, delayed or defrauded *is void*." (Emphasis added)

ORS 95.090 provides that fraudulent intent is a question of fact.

■ On the other hand, a debtor may prefer one creditor over another, provided that the purpose of the transaction is not to defraud other creditors; that there was a fair and adequate consideration for the transfer and that there was no reservation to the debtor of any benefit. *See Boone et al v. Burden,* 259 Or 402, 404, 487 P2d 74 (1971); *Maidment v. Russell,* 159 Or 653, 664, 81 P2d 136, 82 P2d 692 (1938); *Hesse v. Barrett,* 41 Or 202, 68 P 751 (1902); and *Jolly v. Kyle,* 27 Or 95, 39 P 999 (1895).

■ Similarly, it is established in Oregon, as in most states, that a debtor who is about to be sued in court may transfer assets to his attorney in consideration of future legal services in such litigation and that such transfers will also be upheld against the claims of other creditors when the purpose of the transfer was not to defraud other creditors, where the consideration was fair and adequate and no benefit was reserved to the debtor. *See* Annot., 45 ALR2d 500, 504 (1956). The reason for such a rule has been stated by this court in *Morrell v. Miller,* 28 Or 354, 364, 43 P 490 (1896), as follows:

"* * * The purpose of making such use of his property as to secure able counsel to conduct his defense, and to attend to other apprehended litigation, was perfectly legitimate. His right to be heard by counsel is a constitutional right, and he should be permitted, unless hindered by legal process, the free and untrammeled use of his

property to obtain legal assistance, otherwise constitutional privileges would be invaded. * * *"[1]

■ Indeed, a transfer is not necessarily invalid as in fraud of creditors because it involves all of the property of the grantor or because its effect is to defeat the claims of other creditors. *See Currie v. Bowman,* 25 Or 364, 35 P 848 (1894); and *Hesse v. Barrett, supra,* at 204-05.

■■ In considering whether a transfer was made in fraud of creditors it is also important to bear in mind that if good consideration was given, there must have been a fraudulent intent not only by the grantor, but also by the grantee. *Currie v. Bowman, supra,* at 381, and *Hesse v. Barrett, supra,* at 207, and that the existence of such a fraudulent intent is to be determined as of the date of the transfer alleged to be fraudulent. *Smith v. Popham,* 266 Or 625, 631, 513 P2d 1172 (1973).

■ When, however, a transfer by a debtor in preference of creditors or to an attorney as security for future legal services is made under circumstances which are such as to involve so-called "badges of fraud," the burden is then on the transferee to demonstrate that the transfer was not fraudulent by proof that it was not made with an intent to defraud other creditors; that the consideration was fair and adequate; and that no benefit was secured or reserved to the grantor. *See Evans v. Trude et al and Champlin et al,* 193 Or 648, 240 P2d 940 (1952). *See also Branchfield, Trustee v. McCulley et al,* 192 Or 270, 277, 231 P2d 771, 235 P2d 334 (1951); *Clarke v. Philomath College,* 99 Or 366,

---

[1]Defendant cites *Ford v. Gilbert,* 44 Or 259, 75 P 138 (1904), as holding that an attorney has no lien for his services against a fund in court. In that case, however, there had been no previous conveyance to the attorney as security for such services, as in this case.

377, 193 P 470, 195 P 822 (1921); and *Hesse v. Barrett,*
*supra,* at 204-05.[2]

■ In applying these rules of law to the facts of this
case, we must first recognize that there are sufficient
"badges of fraud"[3] to impose upon defendants the

[2]These "badges of fraud" are listed as follows in *Evans v. Trude et al
and Champlin et al,* 193 Or 648, 656-57, 240 P2d 940 (1952):

"* * * The compelling ones in terms of long-recognized indicia of
fraud are: (1) The consideration as found in the quitclaim deed from
Dale W. Trude to his mother is inadequate (*Willamette Grocery Co. v.
Skiff,* 118 Or 685, 691, 248 P 143). The recited consideration was $10.
The deed carried no revenue stamps as would have been necessary if it
were delivered in payment of a debt in the amount claimed by the
appellants. (2) The transfer of the property was in anticipation of a
pending suit (*American Surety Co. v. Hattrem,* 138 Or 358, 365, 3 P2d
1109, 6 P2d 1087; *Crocker v. Russell,* 133 Or 213, 220, 287 P 224). The
fact that the anticipated action was in tort does not affect the rule (37
CJS, Fraudulent Conveyances, 925, § 82). (3) The transferor-debtor
was insolvent (*Crocker v. Russell,* supra, at page 220). (4) There was a
failure to record the instrument within a reasonable length of time
after execution without explanation for the delay (*Blackabee v.
Seaweard,* 112 Or 675, 678, 231 P 146; *Clarke v. Philomath College,*
supra, at page 378). The deed was executed March 17, 1948, but not
recorded until April 8, 1948, two days after the filing of the damage
action. (5) The conveyance was a transfer of all or substantially all the
debtor's property (*Marion Automobile Co. v. Brown,* 127 Or 551, 558,
272 P 914; *American Surety Co. v. Hattrem,* supra, at page 365; *Crocker
v. Russell,* supra, at page 220). (6) The retention of possession of the
premises by the grantor from the date of the execution of the deed in
March, 1948, to and until the sale of the property to the defendants-
respondents Champlin in the latter part of June of that year stands
unexplained (*Blackabee v. Seaweard,* supra, at page 678) and also
unexplained are the subsequent agency activities of Dale Trude in
connection with the mortgaging and selling of the property previously
conveyed to his mother (37 CJS, Fraudulent Conveyances, 928, § 92).
(7) The transfer so completely depleted the assets of Dale Trude that
his creditor, the plaintiff, has thereby been hindered and delayed in
recovering any part of his judgment (*Clarke v. Philomath College,*
supra, at page 379). (8) The relationship of the parties becomes an
additional badge of fraud when there also appear other circumstances
which of themselves incite distrust and suspicion (*Marion Automobile
Co. v. Brown,* supra, at page 560; *Blackabee v. Seaweard,* supra, at page
677). * * *" (Emphasis theirs).

[3]These "badges of fraud" include the fact that the transfer was in
anticipation of a pending lawsuit; that the transferors were probably
insolvent; that they retained possession of the property transferred; that as
a result of the transfer plaintiff has been hindered and delayed in
recovering any part of his judgment; and the confidential relationship

burden to prove that on May 31, 1972, the deed by Hansens of their house to Mr. Winslow as trustee, and the accompanying letter, were not made with an intent to defraud the other creditors of the Hansens, including plaintiff.

■ As previously stated, however, these "badges of fraud" are not conclusive, but may be overcome by evidence that the intent of both the Hansens and of Winslow was not to "hinder, delay or defraud" other creditors, including plaintiff; that the consideration for the transfer was fair and adequate; and that no benefit was reserved to Hansens, as the debtors.

■ Our review of the record convinces us that these requirements were satisfied by the evidence offered by defendants. A debtor who faces two lawsuits and an attorney who is requested to represent the debtor in such lawsuits are entitled to make proper arrangements to secure the payment of attorney fees, particularly where, as in this case, the pending litigation was of such complexity and importance as to make it probable that it would be necessary for the attorney to devote a large amount of time in the proper representation of his client.

■ We believe from the evidence that the primary intent of the Hansens and of Winslow was to secure Winslow's attorney fees and the loans from their son. The testimony to that effect is corroborated by the fact that the deed was in trust and that it was made clear by the accompanying letter that Winslow did not claim ownership of the property. This being so, the fact that they both may have recognized that the arrangement might make it difficult, or even impossible, for plaintiff to secure payment of any judgment is not controlling.[4]

---

between Hansens and Winslow. *See Evans v. Trude et al and Champlin et al,* 193 Or 648, 656-57, 240 P2d 940 (1952).

[4]The fact, as pointed out by plaintiff, that this letter also provides that the "obligations" are to "mature" in the event of an effort by plaintiff to

■ We also find from the evidence that the consideration for the transfer was fair and adequate. Although it is true that at the time of the transfer the amount of Mr. Winslow's attorney fees could not be determined because his "time" was to be at least a "substantial factor in the determination of that ultimate fee," that letter of May 31, 1972, made it clear, as previously stated, that he did not claim to have an ownership interest "in the property," but that it was no more than "a security transaction" under which he held title only as trustee to secure his attorney fees and the previous loans to Hansens from their son.

■ For the same reason, we find from the evidence that no unfair benefit was retained by the Hansens with respect to other creditors, including plaintiff, because Hansens had the right to make a preference among creditors and any amounts that might result from the sale of the house in excess of Winslow's attorney fees and the loan from their son would be available for other creditors. The fact that when the house was sold the proceeds were not sufficient to pay the attorney fees and those loans does not of itself mean that at the time of the transaction the Hansens retained any unfair or improper benefit.

The primary basis for the decision by the trial judge appears to be his understanding that at or about the time of the trust deed to the Hansen house on May 31, 1972, there was also a discussion of a similar transfer to Winslow of Hansens' one-half interest in the Village Inn property, as well as Hansens' property in Nebraska. Although, as previously noted, there was a subsequent deed to Hansens' interest in the Village Inn on March 1, 1973, and a deed to the Nebraska property in October 1974, we are unable to find evidence which

"reach" Hansens' interest in the property is not, in our opinion, so inconsistent with such an intent as to require a different result. Neither, in our opinion, is the fact that Mr. Winslow did not disclose to plaintiff or to his attorney the security arrangement agreed upon with his clients to insure payment of his attorney fees.

convinces us that these future transfers were discussed at the time of the trust deed to the Hansen house. Although these subsequent transfers may be some evidence of the previous intent of the parties on May 31, 1972, we find such evidence to be insufficient to overcome evidence offered by defendants to the contrary.

■ The only fund in controversy in this case is the fund of $17,673.17, representing the proceeds from the sale of the Hansen house remaining in escrow and plaintiff's claim to this fund rests solely on his contention that the deed of trust of that house by Hansens to Winslow on May 31, 1972, was invalid.[5] Holding, as we do, that the deed of trust was valid and it appearing that the claims secured by that deed are in excess of the amount of that fund, it follows that plaintiff has no proper claim to that fund. It also follows that the holding by the trial judge to the contrary must be reversed and that this case must be remanded for further proceedings not inconsistent with this opinion.[6]

---

[5] Under these circumstances, we need not reverse the finding by the trial court to the effect that defendants' evidence was insufficient to establish the validity of the subsequent deed to Winslow of Hansens' interest in the Village Inn.

[6] Because of the basis on which we decide this case it is not necessary to consider either defendants' other assignments of error or plaintiff's cross-appeal. Plaintiff's contentions by that cross-appeal are that the trial court erred "in allowing a claim of homestead exemption in favor of the Hansens," thus "granting them priority in a portion of the escrow fund." No such issue is presented in this case as between defendants Hansen and defendant Winslow.

Also, having held that the trust deed of May 31, 1972, was not void for fraud as between defendants Hansen and defendant Winslow, it is not necessary to consider the question whether Allan Hansen, the son, who is not charged with the participation in any such fraud, would be "precluded from claiming under [that trust deed]" as held by the trial judge.