Argued February 23; affirmed March 7; rehearing denied
April 18, 1939

IN RE WAKEFIELD'S ESTATE

MARTIN ET AL. *v.* MOORE ET AL.

(87 P. (2d) 794, 89 P. (2d) 592)

Department 2.

*Sanderson Reed*, of Salem (I. H. Van Winkle, Attorney General, and A. W. Schaupp, of Klamath Falls, on the brief), for appellant.

*P. A. Schwabe*, of Portland (Haas & Schwabe, of Portland, on the brief), for respondents.

BELT, J.  This is a proceeding to escheat to the State of Oregon the property of the estate of Arthur W. Wakefield, deceased.  Wakefield, a single and un-married man, died intestate, leaving real and personal property of an approximate value of $9,000.  An ad-

ministrator was appointed to administer the estate. In the final account, it is averred that the defendants, Emily A. Moore and Claudine Mellinger, are half-sisters of the decedent, Arthur W. Wakefield, and are his sole surviving heirs at law.

The State denies that the defendants have any right, title or interest in the estate and alleges affirmatively that Wakefield was not born in wedlock and died a bachelor subsequent to the death of his mother.

It is the contention of the defendants that Arthur W. Wakefield was born in Missouri on April 12, 1862, during lawful wedlock, and was the son of Anna Wakefield who married Theodore Pleasant in 1861. Defendants assert that Theodore Pleasant, soon after his marriage, joined the Union army and was reported as having been killed in 1862. There is evidence tending to show that, after the death of Pleasant, his widow assumed her maiden name and that, in 1872, she married Henry Lane Clark at Topeka, Kansas. It is conceded that the defendants were born as a result of the marriage between Anna Wakefield and Clark.

The State admits that Arthur Wakefield and defendants, Emily A. Moore and Claudine Mellinger, had the same mother, but asserts there is no proof of any marriage between Anna Wakefield and Theodore Pleasant, or that Arthur Wakefield was born in lawful wedlock.

After hearing, the trial court filed the following findings of fact:

"I.

"That the allegations in the Answer, as amended, of the named defendants Emily A. Moore and Claudine Mellinger on file herein, are true and that the allegations in the Complaint and Reply, as amended, of the

plaintiff are not supported or established by the evidence submitted in the trial of this suit.

"II.

"That Arthur W. Wakefield, deceased, died intestate at or near Grants Pass, Oregon, on or about July 3, 1936, leaving an estate now pending for administration before this Court.

"III.

"That said decedent was the legitimate son of Theodore Pleasant and Anna C. Pleasant, nee Wakefield, who were legally married to each other in Bates County, Missouri, in the year 1861; that the said Arthur W. Wakefield was so born in Bates County, Missouri, on April 12, 1862; that he was the only issue of said marriage;

"IV.

"That Theodore Pleasant died in or about the year 1862 and that thereafter the said Anna C. Pleasant, then being the lawful widow of Theodore Pleasant, deceased, for reasons well and sufficiently shown to this Court, abandoned the use of her surname Pleasant, resumed the use of her maiden name, Anna C. Wakefield, and also reared her son, this decedent, under the name of Arthur W. Wakefield, under which name he was known to the time of his death.

"V.

"That on July 21, 1872, at Topeka, Kansas, the said Anna C. Wakefield, being then the lawful widow of the said Theodore Pleasant, deceased, was legally married to Henry Lane Clark;

"VI.

"That of said marriage of the said Henry Lane Clark and Anna C. Clark, there were born as all the legitimate issue thereof two daughters, Emily A. Clark, who was born at Topeka, Kansas, on June 25, 1875, and Anna Claudine (herein known and hereinafter named as Claudine), Clark, who was born at Ottawa, Kansas, on February 27, 1879;

## "VII.

"That the said Emily A. Clark was on July 3, 1895, near Perrydale, Oregon, legally married to Charles William Moore; that she survived the said Arthur W. Wakefield, deceased, and she is one of the named defendants in this suit;

## "VIII.

"That the said Claudine Clark was on February 22, 1899, at Dayton, Oregon, legally married to James Hiram Mellinger; that she survived the said Arthur W. Wakefield, deceased, and she is the other of the named defendants in this suit;

## "IX.

"That Anna C. Clark, the mother of the said Arthur W. Wakefield, deceased, died at Salem, Oregon, on January 12, 1919.

## "X.

"That the said Arthur W. Wakefield, deceased, was never married, and left no natural, adopted or putative child or children.

## "XI.

"That the said Emily A. Moore and Claudine Mellinger, the named defendants herein, are the lawful and legitimate sisters of the half-blood of the said Arthur W. Wakefield, deceased, and his nearest surviving relatives and next of kin."

Based upon the above findings of fact, the court entered what purports to be a decree, as follows:

"* * * that the above named defendants herein, Emily A. Moore and Claudine Mellinger, are the lawful and legitimate sisters of the half-blood of the above named Arthur W. Wakefield, deceased, are all of his next of kin and heirs at law, and that as such they are entitled to have paid over and delivered to them as their property, one-half (½) to each, all of the clear proceeds and assets of the said estate of Arthur W. Wakefield, deceased, upon conclusion of the adminis-

tration of said estate before this court and defendants be and are hereby awarded costs herein."

The State appeals.

■ This proceeding was treated by the trial court as being in equity and has been so presented on appeal. It is, however, on the authority of *State v. McDonald*, 55 Or. 419, 103 P. 512, 104 P. 967, 106 P. 444, an action at law. In the McDonald case, which was an escheat proceeding, the court said:

"Before considering any other assignments of error it will be necessary to determine the nature of such proceedings, as to whether they are at law or in equity. If the former, we will be confined to an inspection of the bill of exceptions, but if the latter, the whole of the evidence must be considered and the case tried *de novo*. In an action against the State to recover property that had been escheated, this court held that such proceedings is at law (Fenstermacher v. State, 19 Or. 504, 507: 25 Pac. 142), because the subject-matter to be tried is to identify the petitioners as heirs of the intestate, and entitle them to recover the money escheated. This ruling was followed in Young v. State, 36 Or. 417, 424 (59 Pac. 812; 60 Pac. 711: 47 L. R. A. 548), which is a case of the same character. The present case is to escheat the real property of an intestate, but the inquiry is practically the same; that is, to determine whether there are any heirs, and particularly whether the defendants are the heirs. The case of State v. Simmons, 46 Or. 159 (79 Pac. 498), was brought to escheat the property of an intestate. It was tried by the court without a jury. Findings of fact and of law were made and judgment rendered thereon. The case came to this court on the claim that the findings were not sufficient to support the judgment. The question now under consideration was not suggested, but the court treated the case as an action at law, and refused to modify the judgment to accord with what was claimed to be the facts. Section 7 of the act (Laws 1903 p. 129), gives the right to a

trial by jury, if requested by either party, and makes the verdict rendered conclusive upon the court. This, we think, establishes the character of the proceeding to be an action at law.''

■ Since the proceeding is an action at law, we will not consider the cause on appeal as a trial *de novo,* but will determine whether there is substantial evidence to support the judgment. The findings of fact by the court are equivalent to the verdict of a jury.

The vital question is whether there is any substantial evidence tending to prove a legal marriage of Anna C. Wakefield and Theodore Pleasant and that Arthur W. Wakefield was born in wedlock.

■ It is conceded that, under the law of this state, if Arthur W. Wakefield was an illegitimate child and died intestate subsequent to the death of his mother, all the clear proceeds of his estate would escheat to the State of Oregon: *State v. Looney,* 149 Or. 287, 40 P. (2d) 735. However, escheats or forfeitures are not favored in law (10 R. C. L. 613) and it is presumed that a decedent leaves heirs or next of kin capable of inheriting property: 21 C. J. 857. There is a strong presumption in favor of a valid marriage and the strength of such presumption increases with the lapse of time. As stated in Abbott on Facts, p. 1034:

''It may be laid down as a broad general rule that where a ceremonial marriage has been proved, the law raises a presumption in favor of the legality of the marriage, and the burden is on the party questioning its validity to prove such facts and circumstances as will establish its invalidity.''

■ In the instant case there is evidence tending to show a ceremonial marriage between Anna C. Wake-

field and Theodore Pleasant in 1861, at the home of Almeda Francis, a sister of Anna Wakefield, near the town of Butler, in the state of Missouri. The ceremony was performed by Reverend Daniel Francis, a Christian minister. Such, in substance, is the testimony of Emily A. Moore, as related to her by her mother Anna C. Wakefield. True, this testimony is hearsay, but, since it relates to the history and tradition of the family concerning the pedigree of the decedent, it is admissible as an exception to the general rule: Jones Commentaries on Evidence (2d Ed.) § 1135; *State v. McDonald*, supra. There are many other facts and circumstances tending to show that, according to family tradition, Arthur Wakefield was always looked upon by the family as a legitimate child. At any rate the evidence relative to the ceremonial marriage tends to support the judgment. Having thus shown a marriage, there is a strong presumption that Arthur Wakefield was born in lawful wedlock.

■ It is true, as the State contends, that there is no record of the marriage, but certainly that is not fatal to its validity. In those turbulent times of border warfare, few marriages were recorded. It is also shown that many of the official records were destroyed. After the lapse of so many years, we think the court may well rely upon the presumption of the validity of the marriage.

■ Since this is not a trial *de novo*, it is not necessary further to discuss the facts as disclosed by the voluminous record. Suffice it to say there is substantial evidence tending to support the judgment. We are not concerned with issues upon which the evidence is in conflict.

It follows that the judgment of the lower court is affirmed.

Rand, C. J., and Bailey and Lusk, JJ., concur.

Petition for rehearing denied April 18, 1939

### On Petition for Rehearing
#### (89 P. (2d) 592)

■■■ BELT, J. The court confesses error in holding that this proceeding was an action at law and that the findings of the lower court were conclusive if supported by any substantial evidence. We are convinced, upon reconsideration, that, since the administration of the estate was pending in the probate court, the proceeding is in equity and, on appeal, this court is not bound by the findings of the trial court, although the same are persuasive. In making such confession of error, about the only consolation we have is that counsel seem to have been equally confused.

We think the proceeding is governed by § 11-1201, Oregon Code Supplement 1935, which provides as follows:

"When any person shall die intestate without heirs, leaving any real, personal or mixed property, interest or estate in this state, the same shall escheat to, and become the property of the state and clear proceeds derived therefrom shall be paid into and become a part of the common school fund of this state and be loaned or invested by the state land board, as provided by law. The county court, before whom any probate matter is pending, shall determine whether there are any legal heirs to said estate, and if it be determined by said court that there are no legal heirs thereto, said court shall order the administrator of said estate to serve upon the said state land board a true copy of the order of court directing that said proceeds shall escheat,

together with a copy of the final account in said estate. The said state land board shall have three (3) weeks from the date of service upon it of said copy of said final account in which to file its objections thereto, and after said final account has been approved by the court said administrator immediately shall pay over to said state treasurer all of such proceeds, and said treasurer shall credit the same to the common school fund as other moneys received from escheats. Such administrator and his bondsmen shall be liable for the payment of such moneys to the state treasurer; provided, however, that nothing in this act shall be construed as repealing any of the provisions of section 11-1221.''

It is not, as contended by counsel for the State Land Board, a suit to determine who are heirs to an estate, as provided in §§ 11-901 to 11-906, inclusive, Oregon Code 1930. The State Land Board, in the probate proceeding, asserted that there were no heirs. It was proper for it to appear in the probate proceedings and make such contention for the purpose of having the ''clear proceeds'' of the estate escheat to the State. In such proceeding it is provided, by virtue of § 11-1201, Oregon Code Supplement 1935, that the court, in the event of finding no legal heirs, is authorized to direct the administrator to transmit the ''clear proceeds'' of the estate to the state treasurer. We are not dealing with a contest between parties asserting that they are legal heirs.

The amendment (Ch. 191, § 1, Laws of Oregon 1915) was made subsequent to the decision in *State v. McDonald*, 55 Or. 419, 103 P. 512, 104 P. 967, 972, 106 P. 444. Hence such decision is not in point.

■ Since this is an equitable proceeding, the cause is heard de novo in this court. A great deal of time has been given to a consideration of the voluminous record in this case and we still adhere to the conclusion reached

on original hearing—that the defendants are entitled to prevail.

We think it is established by the greater weight of the evidence that there was a ceremonial marriage and that Arthur W. Wakefield was born in lawful wedlock. Much space is devoted in the brief of appellant in support of the contention that the evidence does not show a common-law marriage, but we submit the defendants are relying upon a ceremonial marriage. Hence such argument is not pertinent to the issues.

Unless the testimony of Emily A. Moore is absolutely false concerning the marriage of Theodore Pleasant and Anna C. Wakefield, as related to her by her mother, the decree of the lower court should be affirmed. The trial court, who saw and heard her testify, believed that she was telling the truth. We concur in such finding. It is not necessary to repeat what has been said concerning the presumption in favor of the validity of the marriage.

It follows that the decree is affirmed. Defendants are entitled to costs and disbursements.

The petition for rehearing is denied.

RAND, C. J., and BAILEY and LUSK, JJ., concur.