Argued April 7, reversed May 18, 1955

In the Matter of the Estate of Henry Otto Genies,
Deceased

## STATE LAND BOARD *v.* GENNIES et al

283 P. 2d 655

*Robert G. Clostermann,* Portland, argued the cause and filed a brief for appellants.

*Catherine Zorn,* Assistant Attorney General, Salem, argued the cause for respondent.

Before Warner, Chief Justice, and Rossman, Latourette and Perry, Justices.

LATOURETTE, J.

This is an appeal by Albert Gennies, et al., alleged to be the heirs at law of Henry Otto Genies, deceased, from a decree escheating the latter's estate to the State Land Board. The decedent died intestate on July 7, 1949, leaving an estate in excess of $25,000. His estate was probated in Clatsop county, Carl H. Svenson being named administrator thereof.

The State Land Board brought an escheat proceeding in the county court pursuant to § 21-101, OCLA, as amended by ch 105, Oregon Laws 1943, ORS 120.030, whereupon Albert Gennies, the alleged brother, and the alleged nephews and nieces of the deceased appeared claiming to be the heirs at law of the deceased. The case was thereupon transferred to the circuit court for trial.

The testimony of Carl Svenson, a blacksmith residing in Astoria and administrator of Henry's estate, is to the effect that he had known the deceased since 1917 after he had moved to Altoona, Washington, across the Columbia river from Astoria; that Henry lived in a shack in Altoona and was a fisherman; that he had told him that he came from Heidekrug, Germany; that he never said much about his family excepting that he had a brother living near Hamburg, Germany, and that his occupation in Germany was that of sailor in the German navy.

With respect to his contact with the claimant Albert, he testified as follows:

"Q How did he get in touch with this witness, Albert Genies; I will ask you; How did you get in touch—How did Albert Genies—A Through Mr. Clostermann.

"Miss Zorn: Did he give any details how he learned of his brother's death, if it was his brother? A No. I probably could describe that a little bit

in particular. There was a lodge here that was to be liquidated, and one of the members here called on Mr. Clostermann and Mr. Clostermann came here and saw this member of this lodge and mentioned to Mr. Clostermann that I might have some information that I could help him out with so Mr. Clostermann came to my shop at the time and I gave him all the details that I had, where we had failed through other methods in getting any information such as advertising in papers and trips to Hamburg and different things like that. Then in about three weeks, Mr. Clostermann received word them [sic] from a brother and he phoned me at the time, stating he had got word of the relatives; that there were relatives, and from then on I got the address and communicated with him and told him just what we were doing and so forth and he wanted me to take full charge, being I was a friend such as I had mentioned to him, so I have received two letters from them; Albert Genies, the brother.''

In one of the letters received from Albert by the administrator Albert claimed to be the brother of the deceased. A photograph of Albert accompanied the letter. This photograph, together with a photograph of the deceased, was introduced in evidence by the state.

The evidence discloses that deceased filed a petition for naturalization in the county clerk's office at Kelso, Washington, and on January 13, 1937, he was admitted to citizenship. In the petition it was recited that the deceased was born on September 30, 1876, in Heide-krug, Germany; that he left Bremen on August 15, 1901, and arrived in Baltimore on September 5, 1901; and that his occupation was that of fisherman.

There is in evidence an application of deceased to open a postal savings account dated September 3, 1935, in which he gave his residence as Altoona, Washington, occupation fisherman, birthplace Germany, date of

birth September 30, 1876, father's name Daniel Genies, mother's name Fredrika.

Before trial the court appointed Rudolf Haeussermann, a notary living in Leonberg, Germany, where Albert resided, to take the testimony of Albert regarding his claim to heirship. Direct and cross interrogatories were propounded. Albert's testimony discloses that he was a brother of the deceased. He traced the family history of himself and the deceased, giving the names of the father and mother of both of them, to wit, Daniel and Friederike Gennies, in addition to their places and dates of births and places and dates of their deaths. He also testified that he had a brother, Robert, who had died, leaving certain sons and daughters, the other claimants herein. There is also a photograph submitted by Albert of a sailor lad in the German navy, purporting to be that of the deceased. There is also, submitted by Albert, a photograph of his brother Robert and a copy of the German marriage register wherein it appears that Robert was a son of the wheelwright Daniel Gennies and Friederike Gennies, both residing in Minneiken.

There is a death certificate of Robert, properly authenticated by the Registrar of Vital Statistics of Hamm, Westfalen, dated February 23, 1953, which states that Robert resided in Hamm and died on February 13, 1930, at 17 o'clock 30 minutes, in Hamm, Westfalen; that he was born in Minneiken, Kreis Heydekrug and was married to Anne Katherine Marie nee Kaemper, residing in Hamm, Westfalen. In addition to the above there is an appearance and petition of Albert Gennies in the proceedings in the county court in which there is attached a power of attorney given by Albert to Robert G. Clostermann. The power of attorney is notarized by one Daiber, a notary public of

Leonberg and dated June 22, 1950. The certificate of the notary states:

"On this 22 day of June in the year 1950 before me Mr. Daiber, Notary Public for State of Wuerttemberg, at Leonberg personally came:

"Albert Gennies, born on October 7th, 1888 in Willeiken, East Prussia, residing in Schoekingen, Waldstrasse 8, District of Leonberg to me personally known to be the individual described in, and who executed the foregoing instrument in my presence and duly acknowledged to me that he executed the same for the purposes therein mentioned."

It will be noted that the notary above mentioned was originally appointed by the trial judge as commissioner to take the deposition of Albert and because the deposition was sent to the county clerk and opened prior to the trial that deposition was not used.

 It is a familiar rule of law that there is a presumption that a decedent leaves heirs or next of kin capable of inheriting property, and that escheats are not favored. *In re Wakefield's Estate,* 161 Or 330, 87 P2d 794, 89 P2d 592. In the case of *In re Braun's Estate,* 167 Or 218, 117 P2d 238, we held that heirship had been established on the deposition of Sophie Braun, a sister of the deceased, which was uncontradicted. In that case there were written declarations made by the claimed heirs contained in letters written by them to the administrator of the estate. Based upon the above evidence we held that the property of the estate should not escheat.

In the present case we have considerably more uncontradicted evidence of heirship than was noted in the Braun case. In addition to the testimony of Albert and the documentary evidence in the case we have the photographs of Albert and the deceased which show a striking family resemblance.

It is suggested that the information in Albert's deposition was such as might be found by reference to public records after Mr. Clostermann interested himself in the case. The only public records that Mr. Clostermann might have had access to were the citizenship records of deceased and his application for a postal savings account. The record shows that Albert resided in Leonberg, Wurttemberg, Germany, whereas the marriage and death certificates of his brother Robert are on file in the vital statistics records of Hamm and Herford in Westfalen, some considerable distance from Leonberg. Albert would have had psychic powers to have discovered these records without prior knowledge of them, and, further, if Albert's claim were spurious he certainly would not have brought the other claimants into the picture as claimants but would have attempted to procure the entire estate for himself.

It is urged that claimant should have supplied more definite information concerning the genealogy of the family than was produced. In this connection, other information was not easily obtainable because all the parties involved were born in East Prussia behind what that redoubtable Englishman, Sir Winston Churchill, terms "The Iron Curtain."

The trial court conducted three separate hearings extending over a considerable period of time in the trial of the case. There was on file with the clerk the original abortive deposition of Albert besides several affidavits of claimants setting forth facts tending to establish heirship. Thereafter, when the commission to take another deposition of Albert was issued the state was fully apprised of the claims to heirship and had ample opportunity to produce contradictory evidence had it seen fit. This it did not do.

Reversed. No costs.