Argued April 3, affirmed May 17, 1972
# CARLSON ET UX, *Respondents, v.*
## PRYOR ET UX, *Appellants.*
### 497 P2d 202

*Glenn D. Ramirez,* Klamath Falls, argued the cause for appellants. On the briefs were Ramirez & Hoots, Klamath Falls.

*Robert S. Hamilton,* Klamath Falls, argued the cause for respondents. With him on the brief were Beddoe, Henderson & Hamilton, Klamath Falls.

BRYSON, J.

This is a suit to foreclose a mortgage given by defendants, Robert and Joyce Pryor, to secure performance of a demolition and salvaging contract on property situated in Klamath County, Oregon. The case was tried to the court and a decree and judgment was entered in favor of plaintiffs and against defendants for foreclosure of the mortgage in the amounts of $2,064.40, the reasonable value of the salvageable materials; $1,782, reasonable cost of removing and burning the non-salvageable materials and attorney fees for deficient performance of the contract by the defendant Robert Pryor.

On June 14, 1965, plaintiffs Ragnar L. and Lila B. Carlson, husband and wife, entered into an agreement with defendant Robert Pryor to raze a factory building situated in Klamath County, Oregon, that was blocking the right of way for a planned highway. The salvageable material from the building was to be divided between the parties according to their written agreement. All non-salvageable material was to be stacked off the right of way and burned by Robert Pryor. The demolition of the factory building was to begin by June 15, 1965, and Robert Pryor was to complete demolition and burning on or before July 1, 1966. He agreed "to be bound to the First Party in the sum of $10,000.00 to faithfully perform all the terms and conditions of this agreement, said obligation to be evidenced by a promissory note in the amount of $10,000.00 secured by a first mortgage upon certain

real property in the County of Klamath, State of Oregon [description of real property omitted]. If the Second Party shall faithfully perform all the conditions of this agreement, then this obligation is to be void; otherwise to remain in full force and effect."

The note and the mortgage securing defendant's performance were executed and delivered by Robert Pryor and his wife, Joyce Pryor, on June 14, 1965, the same date the agreement was executed.

In the spring of 1966 it was evident that defendant Robert Pryor would not complete the demolition contract within the time provided. Plaintiffs, who were then living in Taiwan, granted a two-week extension for the completion of the contract. Performance of the demolition contract was not completed on August 29, 1966, and plaintiffs terminated Robert Pryor's activity on the property. The plaintiffs returned from Taiwan, employed additional help, and completed the demolition of the building, the burning, and the cleaning up of the premises.

The court, in its Findings of Fact and Conclusions of Law, stated that defendant had failed in the following material respects to perform as required under the June 14, 1965, agreement:

"a. He failed to deliver 30,000 board feet of salvable lumber from the factory building.

"b. He failed to deliver three trusses of quality equal to those retained by himself and one broken truss of quality equal to two broken trusses retained by himself.

"c. He failed to deliver 1844 square feet of roofing from said factory building.

"d. He failed to deliver 31 salvable windows from said building.

"e. He failed to remove nonsalvable material from

right-of-way mentioned in the Agreement and failed to burn the nonsalvable material";

and entered judgment against the defendants in the amount of $3,846 and attorney fees, and decreed the judgment "a valid and subsisting first lien against" the defendants' real property. The decree further provided that the "lien thereof as provided by the first mortgage * * * is foreclosed in the manner provided by law * * *."

On appeal, defendants contend that the trial court erred in finding that Robert L. Pryor had failed to perform as required under the demolition agreement of June 14, 1965, and therefore erred in entering a decree of foreclosure.

■■ This is a suit in equity. The trial court's findings are not binding on this court. They are persuasive. *Reeves et ux v. Dickenson et ux,* 208 Or 360, 300 P2d 458 (1956); *In re Wakefield's Estate,* 161 Or 330, 87 P2d 794, 89 P2d 592 (1939). *De novo* review of the testimony relating to the trial court's five specific findings of fact leaves no doubt that the weight of the evidence sustained the plaintiffs' claim of damage:

(1) That Robert Pryor failed to deliver 30,000 board feet of salvable lumber from the factory building.

The original estimate of board feet in the building was 300,000. The parties agreed that approximately 65 per cent would be salvageable. The terms of the agreement specified that Robert Pryor would turn over one-third of the salvageable lumber to plaintiffs. By the original estimate, plaintiffs would receive over 62,000 board feet. They received only 7,000 board feet.

Mr. Schill, who subcontracted with Robert Pryor

to perform some of the demolition, salvaged 60,000 board feet from the upper structure alone and left 20,000 board feet for the plaintiffs. Mr. Schill testified that he observed one of Robert Pryor's employees loading some of the plaintiffs' 20,000 board feet into a truck. This testimony was corroborated by Mr. Mc-Entee, plaintiffs' watchman and caretaker on the premises. He further testified that the remaining lumber was leveled by unknown parties before Mr. Carlson returned from Taiwan.

Robert Pryor testified that he received 70,000 board feet of lumber from the entire salvage operation plus 45,000 board feet in big timbers. This evidence, alone, proves the existence of 115,000 board feet of salvageable lumber. Plaintiffs were, therefore, entitled to receive one-third, or more than 38,000 board feet. This exceeds the 30,000 board feet quoted in the trial judge's findings.

(2) Robert Pryor failed to deliver three trusses of quality equal to those retained by himself and one broken truss of quality equal to two broken trusses retained by himself.

The agreement called for plaintiffs to receive six main trusses of equal quality to eight trusses to be retained by Robert Pryor. Plaintiffs received six broken unusable trusses. Robert Pryor, through his subcontractor, Schill, took nine trusses in a usable condition, another was easily repairable, and one was in poor condition.

(3) Robert Pryor failed to deliver 1,844 square feet of roofing from said factory. Under the agreement, plaintiffs were entitled to receive one-third of the 18,000 square feet of roofing. They received only

4,100 of the 6,000 square feet to which they were entitled.

(4) Robert Pryor failed to deliver 31 salvageable windows from the building. Of the 165 windows in the building, 93 were in salvageable condition. Mr. Schill and Robert Pryor took some of the windows. Plaintiffs received not one of the 31 to which they were entitled under the contract.

(5) The testimony and photographic exhibits disclose that Robert Pryor failed to remove and burn the non-salvageable material.

From our review of the evidence we reach the same conclusion as the trial court and affirm the judgment.