Argued March 12, affirmed July 5, late filing of petition for rehearing refused August 21, 1974

NELSON, *Respondent, v.* HANSEN ET UX, *Appellants.*

523 P2d 1248

*Norman K. Winslow,* Salem, argued the cause and filed briefs for appellants.

*J. Ray Rhoten,* Salem, argued the cause for re-

spondent. With him on the brief were Rhoten, Rhoten & Speerstra, Salem.

Before DENECKE, Presiding Justice, and HOLMAN,* TONGUE, HOWELL, and BRYSON, Justices.

BRYSON, J.

Plaintiff brought this suit for specific performance of a sales contract covering real and personal property known as the Sunburst Motel situated in Salem, Oregon. The property consisted of two motel structures and furnishings and thirteen mobile homes installed as additional rentals. The contract was executed by the parties on July 14, 1970, and the purchase price was $178,500, with $10,000 initial credit to defendant purchasers for their conveyance to plaintiff of their equity in other real property. By February, 1972, the purchasers failed to pay the monthly installments, personal property taxes, and fire insurance premium.

Defendants' pleadings admit that defendants did not comply with the terms of the contract and that they received written notice of their default. Defendants filed a counterclaim seeking rescission of the contract, claiming they relied on certain material representations by plaintiff in the sale of the property.

The court found that "defendants were not induced to enter into the said contract by fraud, deceit or false representation on the part of the plaintiff" and that "defendants have not sustained the allegations of their amended answer and crosscomplaint."

---

* Holman, J., did not participate in the decision of this case.

The court further decreed the sums of money due by defendants and ordered defendants to perform under the terms of the contract within three and one-half months or that the property be sold in the manner provided by law as on execution.

The defendants appeal, contending that "[t]he trial court erred in failing to grant the Defendants rescission of the contract of sale * * *" and in "entering a decree of specific performance, when the Plaintiff did not come into equity 'with clean hands'."

■ We consider the case de novo on the record. ORS 19.125 (3). However, as we recently held in a case involving specific performance of a real property sales agreement, the findings of fact of the trial judge who has an opportunity to observe the demeanor of the witnesses are entitled to great weight. *Phillips v. Johnson,* 266 Or 544, 514 P2d 1337 (1973). *See also Carlson et ux v. Pryor et ux,* 262 Or 131, 134, 497 P2d 202 (1972).

A review of the evidence discloses that the trial court was presented with conflicting evidence as to defendants' affirmative allegations; that both plaintiff and defendants had experience in buying and selling real property.

Defendants allege that plaintiff, to induce the sale, made the following misrepresentations:

"(1) That the fair cash market value of the real and personal property described and sold in said Exhibit 'A' was in excess of $178,500.00;

"(2) That Faye M. Nelson, the then wife of the Plaintiff was unwilling to sign such agreement, because she felt the purchase price was too low."

Plaintiff denied that he told defendants that the

fair cash market value of the property was in excess of $178,500. He testified:

"Q Now you are accused here, Mr. Nelson, of representing that the fair cash market value of the real and personal property sold under that contract was in excess of $178,500.00. What did you tell them about that?

"A I didn't, that I can recall. We didn't talk about what it was worth. We talked about the income picture. I kind of picked out in my mind what I had in it and we arrived at a price."

Plaintiff purchased the motel property in 1960 for $75,000 prior to construction of the Fred Meyer shopping center across the highway. He made substantial improvements and additions to the property, amounting to $56,000. He purchased thirteen mobile trailer units at a cost of $47,800 and prepared them as rental units with electric power and sewer connections, and he estimated that the land increased $20,450 in value. Plaintiff prepared these figures before trial-and testified as to their correctness but contended he did not discuss the same with defendants prior to executing the contract.

Defendant Mr. Hansen testified as follows:

"Q Now did Mr. Nelson show you his costs?
"A No.

"Q Did he tell you his costs?
"A No.
"* * * * *.

"Q Well, there was never anything said—excuse me. Now you have alleged in this answer that he concealed from you that he had recently acquired the property at a cost of not more than $90,000.00. What did he do to conceal it from you?

"A Well, there was never anything said about

what he paid for it. He never told us anything about what it cost him, what he had in it.

"Q   Did you ever ask him?

"A   No. I don't recall that I ever did.

"* * * * *.

"Q   Did you ask him at all to disclose how much that he had paid for the remodeling?

"A   No.

"Q   Did you ask him at all to disclose how much he had originally paid for the property?

"A   No.

"Q   Did you ask him at all how much he had paid for the mobile homes?

"A   No, not that I recall."

Defendant Mrs. Hansen testified:

"Q   Well, lets put it this way then, prior to your signing the contract and prior to your signing defendant's exhibit 'N' [original written memorandum of terms of sale] which is before you, did Mr. Nelson tell you anything about what he had in the motel?

"A   No, not that I recall.

"Q   Now Mrs. Hanson [sic], did you have an appraisal made of this property before you bought it?

"A   No.

"Q   Is there anything Mr. Nelson did to prevent you from having an appraisal or talking with anyone about the property?

"A   No."

At the time of sale plaintiff and his wife were having domestic problems. The then Mrs. Nelson delayed signing the contract, and defendants contend that Mr. Nelson represented to defendants that Mrs. Nelson did not want to sign because the purchase price

was too low. Both defendants testified that the alleged statement by Mr. Nelson was made after the defendants and Mr. Nelson had signed the contract of sale. Therefore, such a statement could not have induced them to sign the contract.

Defendants also alleged that in connection with the sale, plaintiff concealed from defendants that he had recently acquired the property for not more than $90,000. We find no evidence to support this contention.

Defendants further contend that plaintiff did not "come into equity with clean hands" and that the decree of the trial court will destroy defendants economically and award plaintiff an exorbitant profit. From the testimony in this case it is difficult to see how either party could have profited from the sale and purchase of this motel, and we find no merit in this contention.

■ A fair appraisal of the testimony indicates that both parties thought they were making a good sale and purchase. Defendants hired a manager to operate the motel. There is evidence that the motel was mismanaged under the ownership of defendants but in spite of this, the record shows that the income from rentals increased until the property became in disrepair. Defendants used assets from the motel operation to pay other personal taxes and debts. The contract was executed on July 14, 1970, and the defendants gave written notice of rescission in June of 1972. In August, 1971, defendants listed the property for sale with Eastridge Real Estate for $179,500. The trial court found that the allegations in the defendants' counterclaim were without merit.

We conclude from the evidence that there was no overreaching or concealment of material facts by the plaintiff and the defendants failed to offer convincing evidence that they were entitled to rescission of the contract of sale.

Affirmed.